UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 1:18-cr-464 |
| vs. | : OPINION & ORDER |
| | : [Resolving Doc. 10] |
| CESAR VELOZ-ALONSO, | : |
| Defendant. | : |

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the Court decides whether to grant Defendant Veloz-Alonso's request to be released on bond pending sentence, under the Bail Reform Act ("BRA"). This relatively straightforward question has devolved into an Article II turf war between the United States Attorney and United States Immigration and Customs Enforcement ("ICE"). If the Court grants Defendant's motion, ICE threatens to detain and deport him before the Court can impose a sentence.

On August 15, 2018, the Government charged Defendant Veloz-Alonso with illegally reentering the United States.[1] The Defendant pled guilty to the charge on October 2, 2018.[2]

The next day, Defendant moved the Court to release him on bond pending sentencing.[3] The Court held an initial hearing on this issue on October 4, 2018 and further hearings on October 10, 2018.[4] For the reasons stated at those hearings, and in this opinion, the Court **GRANTS** Defendant's motion, subject to the conditions detailed herein.

### Discussion

As an initial matter, the Government claims that Defendant waived his right to a detention hearing at his arraignment.[5] Not so. The minutes for the arraignment quite clearly state that

---

[1] Doc. 1.
[2] Doc. 9.
[3] Doc. 10. The Government opposes. Doc. 12. Defendant replies. Doc. 14.
[4] Docs. 11, 17.
[5] Doc. 12 at 3.


DEFENDANT'S EXHIBIT A

Case No. 1:18-cr-464
Gwin, J.

"Defendant waived detention hearing *without prejudice as to his right to raise the issue at a later date.*"[6]

### A. The Bail Reform Act Requires Defendant's Release

The Bail Reform Act requires the Court to grant Defendant's motion for after-guilty plea bond if this Court finds, by clear and convincing evidence, that he "is not likely to flee or pose a danger to the safety of any other person or the community" and that bond conditions would assure his presence at the proceedings.[7] The evidence demonstrates just that.

Thirty-nine-year old Defendant Veloz-Alonso is married with three children and appears to have spent twenty-five years in this country.[8] An employee at his son's school indicated that Defendant's "dedication to his family is apparent [and] he takes pride in the educational success of his children."[9] His son's teacher stated that Defendant is "very involved in [his son's] education, making sure he is at school on a regular basis, [and] that his [son's] work is done."[10] And his employer described Defendant as "a loving and responsible father."[11]

Defendant worked for Heinz Construction for thirteen years.[12] He apparently worked "very hard and very seriously," often arrived early, and was "the top skilled tradesperson on [their] crew."[13] One of Defendant's co-workers describes him as "an honest, hard-working, and reliable person of integrity."[14] In fact, Heinz Construction, itself, has asked to post bond for Defendant.[15]

Defendant is also active in his community. He appears to be active in his church[16] and "a role model not only for his children, but to others in his community."[17] An employee at his son's

---

[6] Doc. 3 (emphasis added).
[7] 18 U.S.C. § 3143(a).
[8] Pre-Trial Services Report.
[9] Doc. 8-1 at 45.
[10] *Id.* at 46.
[11] *Id.* at 43–44.
[12] *Id.*
[13] *Id.*
[14] *Id.* at 47.
[15] *Id.* at 43–44.
[16] *Id.* at 42.
[17] *Id.* at 46.

school wrote that Defendant volunteers on field trips, attends school conferences, and participates in school organizations.[18] This school employee also says that, Defendant "has added to the improvement of Painesville City. He has taken a neglected dwelling and transformed it into a beautiful home."[19] And that, "[d]eporting him w[ould] be a detrimental loss . . . to our vibrant community."[20]

Most importantly, Defendant has no criminal history whatsoever (aside from immigration violations).[21]

Thus, the Court finds there is clear and convincing evidence that Defendant poses neither a flight nor a safety risk.

### B. The ICE Detainer Does Not Change Defendant's Eligibility

The Government informs the Court that, if it releases Defendant on bond, ICE will immediately detain and deport Defendant.[22] It further argues that ICE's possible detention is a risk that Defendant will "flee" under the Bail Reform Act.[23] The Government is incorrect.[24]

To begin, the Government's proposed understanding of the word "flee" stretches English to the breaking point. "Flee" is inescapably volitional[25] and the Bail Reform Act uses it as an active verb.[26] No one would describe someone who had been kidnapped as having fled.

Further, rather than use the word "flee," Congress could have required the Court to determine "that the person is not likely to *miss a proceeding*."[27] It did not.

---

[18] *Id.* at 45.
[19] *Id.*
[20] *Id.*
[21] Pre-Trial Services Report.
[22] Doc. 12 at 3.
[23] *Id.* at 5–6.
[24] *United States v. Santos-Flores*, 794 F.3d 1088, 1090–92 (9th Cir. 2015); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017).
[25] *See, e.g., Webster's Third New International Dictionary* 868 (1981) ("[T]o run away . . . .").
[26] 18 U.S.C. § 3143 ("[T]he person is not likely to flee.").
[27] For example, Congress uses the phrase "reasonably assure the [defendant's] appearance" seven times in 18 U.S.C. § 3142 alone.

Case No. 1:18-cr-464
Gwin, J.

Additionally, taken to its logical conclusion, the Government's argument implies that all deportable aliens are *per se* ineligible for bail. This cannot be case.[28] The Bail Reform Act provides for the temporary detention of noncitizens under certain circumstances,[29] which would be unnecessary if Congress thought that deportable persons were categorically ineligible for bail.[30]

The Government has repeatedly insisted that the Tenth Circuit's opinion in *United States v. Vasquez*[31] supports its proposed definition.[32] The Government badly misreads the Tenth Circuit's opinion. In a subsequent, published decision, the Tenth Circuit explicitly repudiated the Government's interpretation of flight, and of *Vasquez*.[33]

In short, the Court does not believe that "flee" is malleable enough to allow the Government to *create* the very violation it then insists should preclude release.

More fundamentally, the Court does not believe that ICE has the authority to carry out its threat to detain Defendant in spite of the Court's bail determination. This issue arises in the collision between the Immigration and Naturalization Act ("INA") and the Bail Reform Act . The INA generally authorizes ICE to detain a deportable alien.[34] Conversely, as discussed, the BRA requires the Court to release Defendant on bond with the conditions necessary to reasonably ensure Defendant's attendance at the sentencing hearing. The Court cannot enforce that mandate if ICE deports Defendant before sentencing.

The Court pauses to note that this statutory conflict only exists because two executive agencies will not cooperate. And it is perplexing that the executive branch squanders the time and

---

[28] *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Or. 2012) ("In promulgating the BRA, Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings.") (quotations omitted).

[29] 18 U.S.C. § 3142(d) (If the defendant is *not* temporarily detained, then they "shall be treated in accordance with the other provisions of this section, *notwithstanding* the applicability of other provisions of law governing release pending trial or *deportation or exclusion proceedings*.") (emphasis added).

[30] *See also United States v. Brown*, No. 4-15-CR-102, 2017 WL 3310689, at *4 (D.N.D. July 31, 2017) ("Congress affirmatively extended to alien persons the same protections it affords citizens under the [BRA] . . . the court would violate the Bail Reform Act if it detained defendant based only on the fact . . .[that] ICE has filed a detainer.").

[31] 413 F. App'x 42 (10th Cir. 2011).

[32] Doc. 16 at 5; Doc. 12 at 5–6.

[33] *Ailon-Ailon*, 875 F.3d at 1338, n.2.

[34] 8 U.S.C. § 1231; 8 U.S.C. § 1226.

-4-

Case No. 1:18-cr-464
Gwin, J.

resources it has invested in this issue.[35] The Government itself sponsors streamlined procedures to quickly sentence illegal reentrants.

Although the Sixth Circuit has yet to weigh in, a large number of district courts have concluded that ICE may not detain or deport a federal criminal defendant released on bond.[36] The Court concludes the same.[37]

For one, the BRA is both more recent and more specific than the INA. Plus, the purposes of the Bail Reform Act—providing release to certain criminal defendants—would be decimated by ICE detention. Meanwhile, the purposes of the INA—detention and removal of illegal aliens—would merely be delayed by the Court's order. Finally, the Bail Reform Act tasks judicial—not executive— officers with the responsibility of determining whether a defendant should be released on bond.[38] ICE's proposed action would effectively thwart this authority.

Other considerations also weigh against allowing ICE to proceed. For one, ICE's sudden threat seems at odds with the national interest. By bringing this case, the United States has determined that prosecuting this case is more important than immediate deportation. It has reaffirmed this interest by refusing to dismiss this case. Further, ICE's own regulations seem to generally reflect that a criminal alien defendant's sudden exodus is prejudicial to the United States.[39]

---

[35] Although, apparently, this is more common than the Court thought. *See* Spencer S. Hsu, *U.S. Judges Balk at ICE Detention of Defendants Granted Bail Under Trump 'Zero Tolerance' Push*, THE WASHINGTON POST (Oct. 11, 2018) (https://www.washingtonpost.com/local/public-safety/us-judges-balk-at-ice-detention-of-defendants-granted-bail-under-trump-zero-tolerance-push/2018/10/10/ccd42830-c4f7-11e8-b2b5-79270f9cce17_story.html?utm_term=.6c51b2dec642&noredirect=on).

[36] *See, e.g.*, *United States v. Garcia*, 18-cr-20256, 2018 WL 3141950 (E.D. Mich. June 27, 2018); *United States v. Boutin*, 269 F. Supp.3d 24 (E.D.N.Y. 2017); *Trujillo-Alvarez*, 900 F. Supp. 2d 1167.

[37] While some district courts have gone the other way, even those courts have generally disapproved of the Government's position. *See United States v. Villatoro-Ventura*, No. CR18-4060, 2018 WL 4376983, at *2 (N.D. Iowa Sep. 12, 2018) ("I do not find it appropriate for the federal courts to step in and save the Executive Branch from its own, baffling decisions.").

[38] 18 U.S.C. § 3143.

[39] *See* 8 C.F.R. §§ 215.2(a); 215.3(g). While these regulations do not control here, they certainly suggest that Defendant's abrupt removal in the midst of his criminal proceedings is not in the United States' best interests.

Case No. 1:18-cr-464
Gwin, J.

The Court is unclear as to what ICE seeks to gain through this gambit. It trades a potential sentence for a marginally faster deportation.

Finally, the threatened deportation invades the separation of powers. Once Article II government authorities invoke Article III's jurisdiction over a criminal case, it must cede control of the Defendant while that case is pending. It is practically essential and constitutionally inherent that the Court have custodial powers over a criminal defendant. The idea that executive officers could haul a criminal defendant from the witness stand mid-testimony turns the constitutional paradigm on its head. ICE's position smacks of a threat to the judiciary not to disagree with ICE's bond position.

For the reasons stated, the Court **GRANTS** the Defendant's motion for release pending sentencing so long as he: (i) posts bond in the amount of $30,000, which must be secured by a lien on his home, (ii) remains confined to his home during the period of release, and (iii) complies with electronic monitoring, provided by Pre-Trial Services. The Court further **ORDERS** the United States to refrain from detaining or deporting Defendant while he is released pending sentencing.[40]

Finally, the Court has reached out to this Court's probation department to ask if it is possible to speed preparation of Defendant Veloz-Alonso's presentence report to allow an earlier sentencing hearing.

IT IS SO ORDERED.

Dated: October 12, 2018      s/ _James S. Gwin_
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[40] See *Santos-Flores*, 794 F3d at 1091 ("If the government, by placing [defendant] in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy."); see also 18 U.S.C. § 3142(c)(B) ("[The] judicial officer shall . . . [impose] conditions, that such judicial officer determines will reasonably assure the appearance of the person as required . . . .").