UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | JUDGE SARA LIOI |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE KATHLEEN |
| | ) | BURKE |
| | ) | |
| v. | ) | CASE NO.: 5:18-cr-554 |
| | ) | |
| | ) | |
| EDGAR OSORIO-RAMIREZ, | ) | UNITED STATES' MOTION FOR |
| | ) | REVOCATION OF THE MAGISTRATE |
| Defendant. | ) | JUDGE'S BOND ORDER |

The United States of America, by and through counsel, Justin E. Herdman, United States Attorney, and Danielle K. Angeli, Assistant United States Attorney, hereby submits the following motion to revoke the Magistrate Judge's bond order.  (R. 14: Order, PageID 114-15). The United States respectfully requests that the Court revoke the Magistrate Judge's bond order because there are no conditions or combinations of conditions that will reasonably assure Defendant's appearance as required and protect the community.

**I.  Factual and Procedural Background**

Defendant is a 27-year-old Honduran citizen with no claims to United States citizenship. Defendant was born and raised in Honduras, and his family lives there as well.  On February 17, 2009, U.S. Border Patrol encountered Defendant near the Kingsville, Texas border, and executed an expedited removal order.  On July 26, 2018, Defendant was convicted of operating a motor vehicle under the influence of alcohol, and received a 180-day sentence, with 177 days suspended.  On September 19, 2018, United States Immigration and Customs Enforcement ("ICE") issued Defendant a notice of intent and decision to reinstate the 2009 removal order.

1

On September 26, 2018, a federal grand jury returned a one-count indictment charging Defendant with illegal reentry, in violation of 8 U.S.C. § 1326.  At Defendant's arraignment, on October 3, 2018, the United States moved for detention, and Defendant opposed.  On October 9, 2018, Defendant filed a motion for bond (R. 6: Bond Motion, PageID 11-13), which he supplemented on October 11, 2018 (R. 9: Supplemental Authority, PageID 37-38).  This Court referred the bond motion to Magistrate Judge Burke, who held a detention hearing on October 11, 2018.  (10/11/18 Minutes).  During the hearing, the United States proffered information on Defendant's removal history, and called the Pretrial Services officer to testify.  During the officer's testimony, the United States and Defendant jointly moved to continue the hearing for good cause to allow for Pretrial Services to complete its investigation.  Magistrate Judge Burke continued the detention hearing until October 16, 2018.  (*Id.*).  On October 12, 2018, Defendant filed a motion to dismiss the detention hearing.  (R. 11: Motion to Dismiss Detention Hearing, PageID 93-94).

Magistrate Judge Burke held the continued detention hearing on October 16, 2018.[1]  At the outset, the court addressed Defendant's motion to dismiss, finding that the United States had shown that the case involved a serious risk of flight under 18 U.S.C. § 3142(f)(2)(A).  The court then heard evidence and argument as to whether there were any conditions that would reasonably assure Defendant's appearance at trial and the safety of the community under Section 3142(e).  The United States proffered the pretrial services reports, all of which recommended that Defendant be detained, and Defendant's removal and criminal history.  Defendant called the pretrial services officer and Defendant's girlfriend, Melissa Pastor.  The pretrial services officer

---

[1] A transcript of the detention proceedings, including the hearing on October 16, 2018, was not available before the filing of this motion.

2

testified that there were no conditions or combinations of conditions that would reasonably assure Defendant's appearance as required, given the nature of the offense and lack of community ties.  Ms. Pastor testified that she had been in a relationship with Defendant for the last seven years, and that he had been in the United States for the last eight years.  She explained that they jointly owned their home, and she provided some documentation from the Internal Revenue Service ("IRS"), city of Canton, and Chase bank.  She further explained that Defendant was a father figure to her three children.  She also testified that she did not want Defendant deported, and that Defendant wanted to stay in the United States.

  The United States argued that there were no conditions or combinations of conditions that would reasonably assure Defendant's appearance as required and would protect the community under Section 3142(e).  The United States asserted that the Section 3142(g) factors supported detention.  Specifically, the government argued that there was strong evidence that Defendant illegally reentered the United States after a removal order.  It further argued that the nature and circumstances of the offense, and Defendant's history and characteristics, which included the reinstated removal order and ICE detainer, supported detention.  Finally, the United States argued that Defendant posed a danger to the community given his DUI conviction.  In support of its legal argument, the United States provided the court with three opinions:  *United States v. Valadez-Lara*, No. 3:14-cr-204, 2015 WL 1456530, at *8 (N.D. Ohio Mar. 30, 2015) (Knepp, J.) (denying pre-trial release because defendant's illegal presence will be a *per se* violation of conditions of bail), *United States v. Neves*, 11 F. Ap'x 6, 8-9 (1st Cir. 2001) (illegal reentry defendant posed risk of flight and that no conditions or combinations of conditions would be effective in securing his appearance), and *United States v. Nunez*, No. 5:18-cr-40, 2018 U.S. Dist. LEXIS 80335, at *22 (finding the Executive Branch can exercise its separate powers in the

3

criminal and immigration contexts).  Contrastingly, Defendant argued that he had ties to the community, wanted to stay in the United States, and paid taxes, so he should be released on bond.

Magistrate Judge Burke found that there were conditions that could reasonably assure the appearance of Defendant and the safety of the community.  The court ordered release on a $30,000 bond secured by a lien on the home owned by Defendant and Ms. Pastor.  The court also imposed special conditions to include home incarceration with electronic monitoring, and prohibited Defendant from driving while on bond.  The United States made an oral motion for a stay pending a motion to revoke to this Court, which Magistrate Judge Burke granted.  (R. 14: Order, PageID 115).

The United States moves to revoke the Magistrate Judge's order of release.  (R. 14: Order, PageID 114-15).  For the foregoing reasons, the Court should find that there are no conditions or combinations of conditions that will reasonably assure Defendant's appearance as required and protect the safety of the community, and order that Defendant be detained.

## II. Law and Argument

### A. Standard of Review

Under the Bail Reform Act ("BRA"), for pretrial detention of a defendant, the Court must first determine whether the case "involves a serious risk that such person will flee[.]"  18 U.S.C. § 3142(f)(2)(A).  Then, after finding that a case involves a serious risk of flight, the Court shall hold a hearing to determine whether there are any conditions that will "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(f).  The key considerations in making this determination include, but are not limited to: (1) the nature and circumstances of the offense; (2) the weight of the

evidence against the defendant; (3) the history and characteristics of the defendant, e.g., his character, mental and physical condition, family and community ties, employment status, financial resources, criminal history, substance-abuse history, and probation or supervised release status; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release. 18 U.S.C. § 3142(g).  To prevail on a detention motion, the government must show by a preponderance of the evidence that there are no conditions or combinations of conditions that will reasonably assure the defendant's appearance as required. *United States v. Guerra-Rodriguez*, 59 F.3d 171 (6th Cir. 1995) (table).  Alternatively, it must show by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.  18 U.S.C. § 3142(f).

This Court conducts a *de novo* the magistrate judge's release order.  *United States v. Bush*, No. 3:12-cr-140, 2013 WL 3884505, at *3 (E.D. Tenn. July 26, 2013); *see also United States v. Montgomery*, No. 09-20101, 2010 WL 1052339, at *1 (E.D. Mich. Mar. 19, 2010) (citing case law indicating that, although the Sixth Circuit has not squarely addressed the proper standard of review of a magistrate judge's release or detention order, the majority of circuits to have considered the issue have held that *de novo* review is appropriate).  This Court may rely on both the evidence and offers of proof presented at the original detention hearing before the magistrate judge, as well as additional evidence and offers of proof at its discretion. *United States v. Zapien*, No. 3:14-cr-37, 2014 WL 1028435, at *2 (M.D. Tenn. Mar. 17, 2014); *see also United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) ("[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge.").

    **B.**    **Defendant's case involves a serious risk of flight.**

At the beginning of the October 16th detention hearing, Magistrate Judge Burke found that the case involved a serious risk that Defendant would flee and denied Defendant's motion to dismiss the detention hearing. Defendant has shown he possesses both the ability and the desire to surreptitiously cross the border to illegally enter the United States. Something that is much easier to do within the United States to avoid criminal prosecution and removal. Additionally, he has shown a willingness to defy an order about where he is permitted to go by illegal reentering the country within approximately one year after his original removal order.[2] Similarly, the reinstated removal order gives Defendant a strong incentive to flee to avoid his imminent removal. Thus, as the Magistrate Judge correctly found, Defendant's case involves a serious and significant flight risk.

  **C.** **The Section 3142(g) factors show that there are no conditions of release that will reasonably assure Defendant's appearance as required and the safety of any other person and the community.**

After the Court has determined that Defendant's case involves a serious risk that he will flee, the Court must then hold a detention hearing to determine whether the Section 3142(g) factors will reasonably assure the appearance of Defendant as required and the safety of any other person and the community. 18 U.S.C. §§ 3142(f), (g). Here, the 3142(g) factors show that, more likely than not, there are no conditions or combinations of conditions that will reasonably assure Defendant's appearance as required. Similarly, there is clear and convincing evidence that there are no conditions or combinations of conditions that will reasonably protect the community if Defendant is released.

    1. <u>The nature and circumstances of Defendant's illegal reentry offense favor detention.</u>

---

[2] It is unclear exactly when Defendant returned to the United States, but based on the pretrial services report and Ms. Pastor's testimony, he returned approximately eight years ago.

First, the nature and circumstances of the offense support detention. During the October 16, 2018 hearing, the pretrial services officer testified that the nature of the illegal reentry offense—which involved transient behavior—supported his recommendation that there were no conditions or combinations of conditions that would reasonably assure Defendant's appearance as required. In 2009, Border Patrol removed Defendant pursuant to a final removal order, and in defiance of that order, he returned to the United States within approximately a year. Defendant's unlawful reentry despite the removal order demonstrates his willingness to ignore orders, particularly ones that involve where he is and is not permitted to go.

Relatedly, Defendant came into ICE custody after being convicted of operating a motor vehicle under the influence in Massillon, Ohio. After his conviction, ICE informed Defendant of his reinstated removal order, so he knows that he will be removed. Further, Ms. Pastor testified that she did not want Defendant deported, and that he did not want to be deported either. They both want Defendant to stay in the United States. As such, Defendant has a strong incentive to fail to appear to avoid deportation. Similarly, Defendant faces up to two years in prison for the offense for this felony offense. If released, the threat of imprisonment and removal presents a strong motivation to flee or fail to appear for his court hearings. Defendant's ties to Ms. Pastor and her children further exacerbate this motivation. Based on Ms. Pastor's testimony, it is clear that Defendant has a strong desire to remain with Ms. Pastor in the United States, which incentivizes him to fail to appear for court proceedings in an effort to thwart ICE's removal efforts. Thus, the nature and circumstances of the illegal reentry offense demonstrate Defendant's flight and non-appearance risks, which supports detention.

    2.    <u>The strong evidence of Defendant's guilt and non-appearance risk supports detention.</u>

The weight of the evidence against Defendant is strong, which also favors detention. Defendant admitted to pretrial services that he had been in the country illegally for several years, and Ms. Pastor testified that Defendant had been in the United States for the last eight years. Similarly, there are no identification issues here.  When Defendant was stopped for his OVI, he presented a Honduran passport with his name and photograph.  At the end of the October 16 detention hearing, Magistrate Judge Burke found that the evidence against Defendant was strong. This strong evidence also supports Defendant's flight and non-appearance risk, given his past willingness to violate a removal order and his current knowledge of his imminent deportation. Therefore, this factor likewise supports detention.

      3.      <u>Similarly, Defendant's history and characteristics favor detention.</u>

Defendant's history and characteristics demonstrate that detention is appropriate.  When considering a defendant's history and characteristics, the Court may consider family ties, financial resources, length of residence in community, past conduct, criminal history, and alcohol abuse.  18 U.S.C. § 3142(g)(3)(A).  When assessing Defendant's non-appearance risk, the Court may—and should—consider Defendant's ICE detainer, reinstated removal order, and inevitable removal.  *See Valadez-Lara*, 2015 WL 1456530, at *6 (collecting cases); *see also United States v. Salas-Urenas*, 430 F. App'x 721, 723 (10th Cir. 2011) (a defendant's immigration status is relevant to the detention decision as part of the defendant's history and characteristics); *United States v. Ong*, 762 F. Supp. 2d 1353, 1363 (N.D. GA 2010) ("While a defendant's status as a deportable alien alone does not mandate detention, it is a factor which weighs heavily in the risk of non-appearance analysis.") (citation omitted).

Defendant's defiance of the removal order to reenter the country unlawfully, along with the active ICE detainer, reinstated removal order, and his knowledge of imminent removal,

demonstrate Defendant's serious non-appearance risk.  Moreover, Defendant has no family ties in the United States.  Although Ms. Pastor testified that Defendant had a brother who lived in the United States, Defendant told pretrial services that he had no family here.  He admitted that he was born in Honduras, had grown up in Honduras, and his entire family lived in Honduras:  all of his familial ties are in Honduras.  Although Defendant has a long-term girlfriend, that fact increases Defendant's risk of non-appearance because he does not want to be deported.  Similarly, Defendant has some financial resources, including a house and bank accounts, worth approximately $50,000.  These resources provide him means that increase his flight and non-appearance risks.

Although Defendant introduced tax-related exhibits, which the court admitted under seal, the documents are not Defendant's actual tax filings, but rather are notices showing that Defendant still owes money to the City of Canton and that there are issues with Defendant's 2017 federal return.  In Defendant's Exhibit A, the IRS notice provides that there is a problem with his name and/or taxpayer identification number on his 2017 return.  The IRS further notes that it assigned an Internal Revenue Service number only to complete the processing of his return.  It requests that Defendant provide a valid Social Security Number or Individual Taxpayer Identification Number ("ITIN").  It also shows that Defendant owes $1,030, and is incurring penalties for failure to pay and interest charges.  Defendant's Exhibit B shows that Defendant filed a 2017 return with the City of Canton, but it lists Defendant's account number with the city.  It does not show which Social Security number or taxpayer identification number Defendant used to file the return.  Finally, Exhibit C shows that Defendant has two Chase accounts, and notes that it needs a certified Taxpayer Identification Number, either a Social Security number, an ITIN for individuals, or an Employer Identification Number for businesses.

It also provides that the IRS requires Chase to have a certified taxpayer identification number of each of his accounts, but the bank does not have Defendant's completed W9 with the required information. Thus, this documentation does not show that Defendant availed himself to the government. Further, although Ms. Pastor testified that Defendant used his passport to obtain an ITIN, there was no evidence about what other documentation he presented or how he responded to questions about his citizenship to obtain that number because Defendant did not introduce any of his actual tax filings, and the government cannot access Defendant's tax returns absent a court order under 26 U.S.C. § 6103(i). Therefore, these documents provide little, if any, evidence to support Defendant's financial and community ties.

Defendant's criminal history and alcohol abuse, as evidenced by his recent OVI conviction, likewise support detention. Not only was Defendant committing a crime each day he spent here illegally, he also placed the community at significant danger by operating a vehicle while intoxicated. This also relates the final Section 3142(g) factor: Defendant's danger to the community if released. His OVI conviction shows a further willingness to violate the law and indicates that he has a problem with alcohol.

Accordingly, weighing all of Defendant's relevant history and characteristics, there are no conditions or combinations of conditions that will reasonably assure Defendant's appearance as required, so the Court should order detention.

### D. A secured bond and electronic monitoring provide inadequate protection against Defendant's strong flight and non-appearance risks.

A secured bond with electronic monitoring provides inadequate protection against Defendant's demonstrated flight and non-appearance risks. The First Circuit has affirmed the same for a similarly-situated illegal reentry defendant. *Neves*, 11 F. App'x at 8-9. In *Neves*, the

defendant was born in Cape Verde and came to the United States with his mother as an infant. He remained in the United States for over twenty years, without becoming a U.S. citizen, until his deportation following a drug conviction. He returned to the United States in 2001, was arrested, and the Immigration and Naturalization Service reinstated its prior removal order. *Id.* at *1. After a detention hearing, the magistrate judge denied the government's detention motion, and ordered the defendant released on the following conditions: (1) execution of a $150,000 appearance bond, secured with $15,000 in cash; (2) home confinement to his mother's residence; and (3) electronic monitoring. The government moved to reconsider, and the magistrate judge denied the motion but stayed the defendant's release pending the district court's determination. The district court held a detention hearing and found that the defendant posed a risk of flight and that there were no conditions or combinations of conditions, including those imposed by the magistrate judge, which would reasonably assure his appearance in court when required. The district court noted the defendant's lengthy criminal record in state court, the strong weight of the evidence against him, and the reinstated removal order to support its finding. The defendant appealed, and the First Circuit affirmed the district court's ruling.

When assessing the adequacy of conditions, the First Circuit noted that, although the defendant's mother and friend offered to secure defendant's bond, they "might well be willing to sacrifice the $15,000 security to help [the defendant] avoid being deported again to Cape Verde." *Id.* at *3. Although the sureties testified that they were willing to put up their life savings because they trusted the defendant would appear in court, "the prospect of a significant federal sentence followed by deportation might overcome [the defendant's] loyalty to his family and friends." *Id.* Thus, the court concluded that the secured bond provided inadequate protection against flight.

11

Similarly, the *Neves* Court held that, "where, as in this case, there is a particularly strong incentive to flee, the early detection capabilities of electronic monitoring may be insufficient to overcome that incentive and to guard against the risk of flight." *Id.* The court further noted that it was "not persuaded that lack of resources poses an insurmountable hurdle to [the defendant's] flight." *Id.* It further opined that, "[i]t is not clear . . . what additional protection [the defendant's] mother would provide, beyond that provided by the electronic monitor." *Id.* The First Circuit concluded that the evidence supported a finding that the defendant posed a risk of flight and that no conditions or combinations of conditions—including those imposed by the magistrate judge—would reasonably assure his appearance in court, and affirmed the district court's detention order.

Similarly here, a secured bond with electronic monitoring will not adequately protect against Defendant's flight and non-appearance risks. Although the bond is secured by Defendant's home that he jointly owns with Ms. Pastor, Ms. Pastor testified that they both did not want Defendant to be deported. Defendant and Ms. Pastor might be willing to sacrifice their house to avoid Defendant being deported to Honduras.

Moreover, in light of Defendant's particularly strong incentive to flee or fail to appear for court proceedings, electronic monitoring is likewise insufficient to assure Defendant's appearance as required. Electronic monitoring and home confinement does not secure Defendant's appearance at future hearings. Indeed, Defendant could simply cut his electronic-monitor bracelet, and pretrial services could no longer track his location. At most, it would give the Court notice that he is fleeing and where his last known location was. Further, unlike the defendant in *Neves*, the house is roughly half of Defendant's assets. According to the pretrial services reports, Defendant has access to over $20,000 in his bank accounts, so he does not face

the lack-of-resources hurdle that the defendant in *Neves* faced. Therefore, as in *Neves*, a secured bond with electronic monitoring is insufficient to adequately protect against Defendant's significant flight and non-appearance risks.

> **E. There are no conditions of release that will assure Defendant's appearance at further proceedings because ICE will detain and deport him upon his release.**

At issue here is the interplay between the Bail Reform Act of 1984 ("BRA") and the Immigration and Naturalization Act of 1965 ("INA").[3] The BRA is limited to *criminal* detention. It does not provide that a defendant who is released from criminal detention cannot be detained under some other statute and by some other agency, such as ICE validly exercising its detention authority under the INA for a different purpose. Nothing in Section 3142 of the BRA overrides the INA's mandate to ICE to detain a defendant during removal proceedings or subject to a final removal order. *See* 8 U.S.C. §§ 1226(a)(1) (discretionary detention for an alien pending decision on removal); 1226(c) (mandatory detention pending a removal decision for aliens with certain criminal convictions); 1231(a)(2) (mandatory detention for aliens with final orders of removal).

Although Section 3142(d) of the BRA does ensure that ICE receives notice about a particular class of alien defendants who pose a flight or safety risk, so ICE has an opportunity to take custody or file a detainer (as ICE did in this case), it does not somehow forfeit the government's ability to detain an alien who is also a criminal defendant until the criminal proceedings are complete. The statute's "notwithstanding" clause just means that, if ICE does not take custody, then the district court may release the defendant from criminal custody under

---

[3] Magistrate Judge Burke refused to hear argument or rule on the subject during the October 16, 2018 detention hearing.

the ordinary BRA provisions. It says nothing about ICE's authority to detain under the INA in that event. Section 3142(d) provides that where denial of bail (1) is warranted under the BRA but (2) ICE does not detain the defendant within ten days, then and only then does the BRA control and supersede other statutes governing release pending removal. It does not, however, also mean that if a court finds that the defendant is not likely to flee or pose a danger to the community that the BRA still supersedes the INA. Primacy of the BRA is triggered only where there is a finding that detention is warranted followed by a declination or failure by ICE to take the defendant into custody within ten days. A finding that detention is not warranted under the BRA has no effect on the Attorney General's statutory authority to detain an alien under the INA. Indeed, Section 3142(d)'s very narrow circumstance where the BRA supersedes the INA strongly suggests that it is the only circumstance in which Congress intended the BRA to limit ICE's detention authority under the INA. *See Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("Drawing meaning from silence is particularly inappropriate . . . [when] Congress has shown that it knows how to [address an issue] in express terms.").

Relatedly, the issue on bond is not whether Defendant is likely to flee the country or even the community, but rather whether he is likely to appear for further court proceedings. *See United States v. Vasquez*, 413 F. App'x 42, 43 (10th Cir. 2011). Given Defendant's reinstated removal order and ICE detainer, there are no conditions that will reasonably assure his appearance at further court proceedings because ICE will likely deport Defendant to Honduras, pursuant to the removal order, before the case is resolved. Moreover, Defendant's non-appearance as a result of the deportation does not entail a volitional requirement.

The Tenth Circuit's holding in *United States v. Vasquez* is instructive. In *Vasquez*, the defendant was charged with illegal reentry, pled guilty, and then filed a motion for release

pending sentencing. The district court denied the motion. It noted that, because of the defendant's immigration status—having a reinstated removal order and an ICE detainer lodged against him—the defendant would not be available to appear at sentencing. The court concluded that, regardless of the defendant's intent or inclination to flee, if he was released pending sentencing, the likelihood was that ICE would take him into custody and execute the removal order, and he would be unavailable for sentencing. *Vasquez*, 413 F. App'x at 43. Vasquez appealed, arguing that the ICE detainer was a legally insufficient basis to deny release.

Because of the reinstated removal order, the Tenth Circuit explained that it need not address the ICE-detainer issue. Applying Section 3143, the court held that it need not address the various possibilities of defendant's behavior if released on bond because "regardless of what is possible, [the defendant] was required to show, *by clear and convincing evidence*, that he is not likely to flee (*i.e.*, that he is likely to appear in court when required)." *Id.* at 44 (emphasis in original). Because the defendant had both the ICE detainer and a reinstated removal order, "there [wa]s no evidence, let alone clear and convincing evidence," that he would appear at the sentencing hearing. Thus, the Tenth Circuit affirmed the denial of release. *Id.*

The *Vasquez* Court correctly held that, regardless of the defendant's intent, there were no conditions that would reasonably assure his appearance in court. Moreover, the plain language of the BRA says nothing about volition. *See* 18 U.S.C. §§ 3141–3156. Similarly, the legislative history and purposes of the BRA focus on a defendant's appearance and preventing danger to the community, not on a defendant's intent. *See* S. Rep. No. 98-225, *reprinted in* 1984 U.S.C.C.A.N. 3182, 1983 WL 25404, at *3 (explaining that the "basic philosophy" of the 1966 version of the BRA was that "the sole purpose of bail laws must be to assure the appearance of the defendant at judicial proceedings"). Thus, volition is not required. *C.f. United States v.*

15

*Calixto-Bravo*, 109 F. App'x 33, 34 (6th Cir. 2004) (reversing district court and ordering the defendant be detained where ICE would eventually deport the defendant).

Although *Vasquez* discusses detention in the Section 3143 post-plea context, its rationale applies with equal, if not more, force here because Section 3142 requires the Court to determine whether there are any conditions or combinations of conditions that will "*reasonably assure the appearance of [the defendant] as required.*" 18 U.S.C. §§ 3142(b), (c), (f) (emphasis added). There is no volitional requirement to his unavailability. If the Court grants release on bond, ICE will arrest Defendant and execute the removal order, resulting in Defendant's removal to Honduras within roughly a week or two after coming into ICE custody. Therefore, as in *Vasquez*, there are no conditions that will reasonably assure Defendant's appearance.

Defendant's reliance on Judge Gwin's recent order in *United States v. Cesar Veloz-Alonso*, Case No. 1:18-cr-464, is inapposite. (R. 12-1: Notice of Supplemental Authority, PageID 99-104). There are several important distinctions from the *Veloz-Alonso* case and Defendant's case. First, Veloz-Alonso is thirty-nine, married with three U.S. citizen children, and has spent twenty-five years in the country. (*Id.*, PageID 100). Similarly, Magistrate Judge Burke noted during the October 16, 2018 detention hearing, that there were important factual differences between Veloz-Alonso and Defendant. Here, Defendant has much less of a tie to the community, and has spent significantly less time in the United States. Defendant also has an OVI conviction, whereas Veloz-Alonso's only criminal conviction was for illegal reentry. (*Id.*, PageID 100-101). Thus, the two men's history and characteristics differ.

Additionally, Veloz-Alonso already pled guilty, so Section 3143 controlled the court's analysis. Section 3143 provides that the court must assess whether the defendant has presented clear and convincing evidence that he is "not likely to flee." (*Id.*, PageID 100 (citing 18 U.S.C.

16

3143(a)). In this context, the court held that "fleeing" requires volition. (*Id*., PageID 101-02). In so finding, the court contrasted Section 3143 with the "reasonably assure the defendant's appearance" standard in Section 3142, which he noted Congress used seven times in Section 3142 alone. (*Id*., PageID 101). The order therefore provides no support for Defendant's position, as it rests on his interpretation of a different standard of release.[4]

In sum, it is not the mere fact that an ICE detainer exists that warrants detention in this case. Rather, the INA mandates that ICE detain and execute his removal pursuant to its reinstated removal order. *See* 8 U.S.C. § 1231. Indeed, if Defendant is released on bond to this Court, ICE will effectuate its valid removal order against Defendant and deport him to Honduras, making him unavailable for further Court proceedings. Because Defendant's non-appearance under Section 3142 does not include a volitional requirement, Defendant's certain deportation under the reinstated removal order precludes a finding that there are any conditions that will reasonably assure his appearance at further court proceedings in this case.

---

[4] Additionally, the government has appealed Judge Gwin's order. *United States v. Cesar Veloz-Alonso*, Case No. 18-3973 (6th Cir. 2018).

> **F.  Detention is required because Defendant's presence in the United States while on release would be a *per se* violation of the conditions of his release.**

Although not binding, *Valadez-Lara*, 2015 WL 1456530, at *8, lends additional support for Defendant's detention.  There, the court similarly assessed whether bond was appropriate on an illegal reentry case pending trial under 18 U.S.C. § 3142.  It noted that it "would be inclined to grant [the d]efendant bail absent one factor, his unlawful presence in this country." *Id.* Specifically, one statutory condition of release under the BRA requires that the person not commit a Federal, State, or local crime during the release period. *Id.* (citing § 3142(c)(1)).  The defendant, however, "by virtue of his very presence [in the United States], is committing an illegal act and 'indeed his [ ] release would violate perhaps the most important condition of release, that he not continue to violate the law.'" *Id.* (citing *United States v. Campos*, 2010 WL 454903, at *2 (M.D. Ala. Feb. 10, 2010)).  This finding applies equally here.  As in *Valadez-Lara*, there is nothing the district court "can do to remedy Defendant's unlawful presence in this country nor can it ignore or absolve him of the inevitable violation of a condition of his release[.]" *Id.*  Additionally, if released on bond, Defendant must be completely self-sufficient. He may not be permitted to work because he does not have proper work authorization. Moreover, he cannot be housed by someone else or that person would be harboring an illegal alien, in violation of 8 U.S.C. § 1324(a).

In sum, the Court should find that, consistent with *Vasquez* and *Valadez-Lara*, given the ICE detainer, reinstated removal order, and previously-discussed facts supporting the Section 3142(g) factors, it is more likely than not that there are no conditions or combinations of conditions that will reasonably assure Defendant's appearance at future judicial proceedings.

18

  **G.**  **Defendant's OVI conviction additionally shows that there are no conditions or combinations of conditions that will protect the public.**

Although the Magistrate Judge's order included a special condition that Defendant refrain from driving, that condition does not adequately protect the public. Defendant has already shown a willingness, when under the influence of alcohol, to ignore the law and drive his vehicle. As such, a bond condition that he refrain from driving likely will not deter him from driving drunk in the future. Particularly given the fact that his thinking and reasoning was impaired when he decided to drive drunk, and would be similarly impaired if he engaged in the same conduct in the future. Thus, Defendant's OVI conviction presents clear and convincing evidence that there are no conditions that will reasonably protect the public if Defendant is released.

  **III.**  **CONCLUSION**

Based on the foregoing, the United States respectfully requests that the Court revoke the Magistrate Judge's order for bond, and detain Defendant pending the resolution of the case.

             Respectfully submitted,

             JUSTIN E. HERDMAN
             United States Attorney

         By: /s/ Danielle K. Angeli
             Danielle K. Angeli (MI: P81362)
             Assistant United States Attorney
             United States Court House
             801 West Superior Avenue, Suite 400
             Cleveland, OH 44113
             (216) 622-3875
             (216) 522-8355 (facsimile)
             Danielle.Angeli@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of October 2018, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Danielle K. Angeli
Danielle K. Angeli
Assistant United States Attorney